UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 06-21124-CIV-MARRA/SELTZER

DAVID LIPPMAN

      Plaintiff
v.

The CITY OF MIAMI,
BROWARD SHERIFF KENNETH C. JENNE, II,
in his official capacity as Sheriff of Broward County,
the UNITED STATES OF AMERICA; and,
MPD Officer Peter Romero, MPD Sgt. Rafael Masferrer,
BSO Sgt. Frank Cornetta, BSO John Melbourne,
FBI Jacques Battiste, FBI Nathan Skipper,
FBI Darrell Tomlin, FBI Christian Hill,
FBI Andrew English, all in their individual capacities.

      Defendants.

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO UNITED STATES'
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant United States has moved to dismiss Mr. Lippman's Federal Tort Claims Act ("FTCA") claims from his First Amended Complaint (DE 66, hereafter "Complaint"). Although defendant nominally bases its motion on several grounds, the primary basis for defendant's motion is its claim that the "discretionary function" exception to the FTCA applies to this case. *See* DE 78 at 1-14, *relying on* 28 U.S.C. § 2680(a). But in making this argument defendant mischaracterizes plaintiff's claims and ignores FTCA precedent under which the discretionary function exception does not apply to a course of conduct commencing with surveillance activities and culminating in a search and seizure in violation of an individual's First and Fourth Amendment rights. For the reasons that follow, defendant's Motion to Dismiss should be denied in its entirety.

## I. GENERAL CONSIDERATIONS

    **A.**    **Standard for Dismissal for Failure to State a Claim.**

The defendant seeks to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under Florida law, sufficient to uphold the plaintiff's claim under the

FTCA. (Complaint, ¶ 97-98).  The standard on a Rule 12(b)(6) motion is well-settled.  A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45 (1957); *Milburn v. United States,* 734 F.2d 762 (11th Cir. 1984).  In evaluating the sufficiency of a complaint, the court must accept the facts as pleaded and construe them in the light most favorable to the plaintiff.  *Parr v. Woodmen of World Life Insurance Co.*, 791 F.2d 888, 889 - 90 (11th Cir.1986); *Williams v. Alabama State Univ*., 102 F.3d 1179, 1182 (11th Cir. 1997). Furthermore, ambiguities must also be construed in the light most favorable to the nonmovant -- here, plaintiff.  *Parr*, 791 F.2d at 889-90.

The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low.  *Quality Foods de Centro America, S.A. v. Latin America Agribusiness Development Corp. S.A*., 711 F.2d 989, 995 (11th Cir. 1983).  Federal Rule of Civil Procedure 8(a) provides only that a complaint must give a "short and plain statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Fin. Sec. Assur., Inc. v. Stephens, Inc*., 450 F.3d 1257, 1264 n. 4 (11th Cir. 2006), *citing*, *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 512, (2002) (internal citations omitted).[1]

### B.  The Nature of Plaintiff's Claims Against the United States

Defendant's Motion to Dismiss ignores what Mr. Lippman has pleaded and re-frames his claims in a way that attempts to trivializes them.  Mr. Lippman has challenged the United States' initiation of unlawful spying on him in violation of his First and Fourth Amendment rights.  DE 66, ¶¶ 1, 3, 27-30, 33-35, 41-44.  The Complaint alleges, *inter alia*, that:

> Mr. Lippman "was surveilled from North Carolina to Miami by the FBI because he was a 'known protestor w/ history.'"(¶ 51) ... [consistent with FBI] history of tracking

---

[1] The "Facts" section of defendant's Motion, DE 78 at 2-5, which adds new "facts" drawn from the Declaration of FBI Agent Battiste attached to the Motion as Exhibit A, must be ignored at this stage as the "facts" it relates differ in material respects from those alleged in the Complaint.

down and surveilling individuals who participate in protests or who express dissenting views (¶ 27) ... [and without] probable cause or other legal justification to conduct the surveillance (¶ 30).

The Complaint further alleges that "After spying upon and following [Mr. Lippman] from North Carolina to Miami because he was a 'known protester w/history' FBI agents recruited local officers to use brute force to break into his vehicle" (DE 66, ¶ 1, *see* ¶ 35) and that it was the FBI surveillance of Mr. Lippman "from North Carolina to Miami by FBI Agents based on the allegation that he was a 'known protestor w/ history' which then led to the search, seizure and damage to his property" (DE 66, ¶ 44). Mr. Lippman alleges that the FBI's actions have chilled his free exercise of his First Amendment rights as well as violating his rights under the Fourth Amendment. DE 66, ¶ ¶ 44, 41. These allegations are repeated and realleged in Mr. Lippman's FTCA claim for relief against defendant United States, in which he claims that the FBI in conducting its surveillance of Mr. Lippman, which culminated in defendants' search and seizure of his vehicle and destruction of and damage to his personal property, engaged in negligence, invasion of privacy by intrusion, and trespass to chattels. DE 66, ¶ ¶ 96-98.

In its ill-considered Motion to Dismiss, defendant United States attempts to transmute Mr. Lippman's claim into one in which he is complaining merely of damage to his vehicle resulting from federal defendants' decision to respond to a call for assistance by local law enforcement about a suspicious vehicle once it was parked in Miami. DE at 2-5. But the plaintiff is the master of his claims and entitled to frame the issues in his pleading. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Significantly, even in its "Facts" section, defendant United States does not dispute the factual allegations of plaintiff's Complaint with respect to what transpired *prior to* the search and seizure of plaintiff's vehicle (*i.e.*, that the FBI's unlawful surveillance occurred and was the proximate cause of the search and seizure). Instead, defendant recounts in excruciating detail the actions of defendant's agents at the site of the vehicle once the decision to search it had been made, adding new "facts" not alleged by plaintiff.

3

Having disregarded Mr. Lippman's actual claims against the United States, defendant then argues that one or another exception to the FTCA applies to the claims as defendant re-frames them and that the Court must therefore dismiss for lack of subject matter jurisdiction. Alternatively, defendant argues that Mr. Lippman's re-framed claims fail to state a cause of action against the United States in any of the three torts he has alleged. As demonstrated below, these are losing arguments. First, it is inappropriate for this Court to entertain the 12(b)(1) motion defendant has made at this early juncture, before discovery has been conducted. Second, neither the discretionary function exception, nor any other FTCA exception, applies to the claims plaintiff actually alleges. Third, plaintiff's actual claims most assuredly constitute valid causes of action under Florida law.

## II. DEFENDANT'S 12(b)(1) MOTION IS PREMATURE.

Even if defendant's motion to dismiss were not in complete disregard of plaintiff's actual claims against the United States, it would be inappropriate to consider and grant the motion at this preliminary stage of the litigation prior to conducting any discovery. In support of its motion, defendant makes the curious decision to cite to a pair of cases that discuss factual attacks on subject matter jurisdiction, *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980) and *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990). Neither of these cases supports defendant's argument for dismissal of this case. In *Menchaca*, plaintiff filed a §1983 claim against a private corporation which depended on a conspiracy theory between the Chrysler Credit Corporation and law enforcement officers. Chrysler filed a motion to dismiss on the basis that there was no conspiracy between Chrysler and the officers and "hence no state action as jurisdictionally required under 42 U.S.C. § 1983." 613 F.2d at 510. The district court held <u>a full evidentiary hearing</u> on this motion:

> [T]estimony was heard from both plaintiffs, both defendant police officers and defendant.... Some of the facts were disputed. In particular, both officers vehemently denied that either of them ever told either of the plaintiffs that defendant Chrysler's agents had a right to repossess the automobile or that Mr. Menchaca would be arrested if he resisted. In fact, Officer Blume testified, and was corroborated by Officer Palacios and the plaintiffs themselves, that she told the plaintiffs that repossession was a civil matter which did not concern the police. The defendant police officers' sole reason for being there was to answer a complaint on a disturbance relating to loud and abusive language by Mr. Menchaca.

Having disregarded Mr. Lippman's actual claims against the United States, defendant then argues that one or another exception to the FTCA applies to the claims as defendant re-frames them and that the Court must therefore dismiss for lack of subject matter jurisdiction. Alternatively, defendant argues that Mr. Lippman's re-framed claims fail to state a cause of action against the United States in any of the three torts he has alleged. As demonstrated below, these are losing arguments. First, it is inappropriate for this Court to entertain the 12(b)(1) motion defendant has made at this early juncture, before discovery has been conducted. Second, neither the discretionary function exception, nor any other FTCA exception, applies to the claims plaintiff actually alleges. Third, plaintiff's actual claims most assuredly constitute valid causes of action under Florida law.

**II.  DEFENDANT'S 12(b)(1) MOTION IS PREMATURE.**

Even if defendant's motion to dismiss were not in complete disregard of plaintiff's actual claims against the United States, it would be inappropriate to consider and grant the motion at this preliminary stage of the litigation prior to conducting any discovery. In support of its motion, defendant makes the curious decision to cite to a pair of cases that discuss factual attacks on subject matter jurisdiction, *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980) and *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990). Neither of these cases supports defendant's argument for dismissal of this case. In *Menchaca*, plaintiff filed a §1983 claim against a private corporation which depended on a conspiracy theory between the Chrysler Credit Corporation and law enforcement officers. Chrysler filed a motion to dismiss on the basis that there was no conspiracy between Chrysler and the officers and "hence no state action as jurisdictionally required under 42 U.S.C. § 1983." 613 F.2d at 510. The district court held <u>a full evidentiary hearing</u> on this motion:

> [T]estimony was heard from both plaintiffs, both defendant police officers and defendant.... Some of the facts were disputed. In particular, both officers vehemently denied that either of them ever told either of the plaintiffs that defendant Chrysler's agents had a right to repossess the automobile or that Mr. Menchaca would be arrested if he resisted. In fact, Officer Blume testified, and was corroborated by Officer Palacios and the plaintiffs themselves, that she told the plaintiffs that repossession was a civil matter which did not concern the police. The defendant police officers' sole reason for being there was to answer a complaint on a disturbance relating to loud and abusive language by Mr. Menchaca.

*Id.* at 511.  In ultimately affirming dismissal under 12(b)(1), the Circuit Court stated:

> We wish to emphasize that this case was not treated by the district court as a summary pretrial disposition as the dissent contends.  As noted earlier, plaintiffs' counsel called five witnesses to testify at the October 5, 1977 hearing ....  The trial court heard on both direct and cross-examination every witness offered by the plaintiffs and observed the demeanor, candor and responsiveness of all the witnesses.  Numerous exhibits were received into evidence.  Plaintiffs had every opportunity to convince the court that the defendant police officers had acted in concert with defendant Chrysler's agents.  Plaintiffs were unconvincing and hence the critical element state action was absent, thus depriving the district court of subject matter jurisdiction to hear any portion of the claim.

*Id.* at 512-513.  By contrast, notwithstanding its passing reference to "fil[ing] a factual attack on this Court's jurisdiction," *see* DE 78 at 6, defendant's Motion to dismiss does not actually "attack" the facts alleged in plaintiff's complaint; rather, for the most part, it simply ignores plaintiff's allegations.  Moreover, there is no evidentiary basis for a "factual" motion to dismiss here, where, in contrast to what occurred in *Menchaca*, there has been no discovery, no less no full evidentiary hearing.

Defendant's reliance on *Lawrence v. Dunbar* is even more misplaced for in that case the Eleventh Circuit signaled its disinclination to grant Rule 12(b)(1) motions based on a factual attack on subject matter jurisdiction where the decision on the facts supporting jurisdiction was "inextricably intertwined" with the merits of the lawsuit.  919 F.2d at 1529.  In *Lawrence* the Eleventh Circuit determined that

> The existence of plaintiff's [FTCA] cause of action depends on whether [the federal agent] was acting within the course and scope of his employment.  The pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the tort claim.  The district court attempted to resolve this disputed factual matter largely on the basis of [another supervisory federal agent's] affidavit, <u>without the benefit of further jurisdictional discovery or an evidentiary hearing</u>.

*Id*. at 1529-30 (emphasis added).  Thus, the Court vacated and remanded the District Court's dismissal of plaintiff's FTCA claim, stating:

> Since the INS's motion was functionally an indirect attack on the merits of the plaintiff's claim, we conclude that "it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 892 (3d Cir.1977).  Furthermore, since we adopt a summary judgment standard in evaluating Rule 12(b)(1) motions that also implicate the merits of a claim, the full panoply of protections afforded the party opposing such a motion will apply here.

5

> We express no opinion on the merits of the plaintiff's claim. We simply hold that under the law of this circuit ... **federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact.**

*Id*. at 1530-1531 (emphasis supplied).

Here the argument against dismissal is even more compelling. Here, there has been <u>no</u> discovery;[2] indeed, plaintiff has had no opportunity to obtain documents or depositions from federal defendants. Dismissal of Mr. Lippman's claims under Rule 12(b)(1) at this juncture is clearly inappropriate.

## III. THIS COURT HAS SUBJECT MATTER JURISDICTION OF THE COMPLAINT

### A. No Discretionary Function Exception Applies to this Case.

As noted above, defendant has mischaracterized plaintiff's claims. Its argument that the discretionary function exception applies is based on that mischaracterization. When plaintiff's *actual* FTCA claims against the United States are considered, no exception applies. The Eighth Circuit recently considered a remarkably similar case and determined that "the FBI's alleged surveillance activities fall outside the FTCA's discretionary-function exception because [plaintiff] alleged they were conducted in violation of his First and Fourth Amendment rights." *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003). *Cf.* DE 66, ¶¶ 28-29 ("LIPPMAN was surveilled from North Carolina to Miami by the FBI because he was a 'known protestor w/ history'. ... Defendant FBI agents had no probable cause or other legal justification to conduct the surveillance of LIPPMAN and their action in doing so violated his First Amendment rights to free press, speech, and assembly, and his Fourth Amendment right to be free from unreasonable searches and seizures.").

In *Raz*, as in this case, the plaintiff filed an FTCA complaint against the United States claiming that the FBI had initiated a "'campaign of Surveillance, Operations and harassment' against him based on his 'expression of certain unpopular political opinions,'" and that the unlawful spying

---

[2]Discovery had been conducted in the *Lawrence* case, although there was some dispute as to whether it had been completed. 919 F.2d 1525, n.6.

on him by the FBI had resulted in an illegal search of his home, and that "the FBI's surveillance activities caused him 'stress' and 'severe deterioration of health and premature aging.'" 343 F.3d at 947.  The defendant argued that "decisions on how to investigate, whom to investigate, and how to present evidence to the proper authorities are not cognizable in FTCA claims pursuant to the 'discretionary function' exception to the United States' waiver of sovereign immunity." Brief of Appellee United States, July 2, 2003, available at 2003 WL 23004461, *13.  The Eighth Circuit resoundingly rejected this argument, because, of course, FBI agents do not possess discretion to violate citizens' constitutional rights.  *Raz,* 343 F.3d at 947, *citing Pooler v. United States,* 787 F.2d 868, 871 (3d Cir.) (noting that discretionary-function exception would not apply if complaint alleged that federal agents violated plaintiff's constitutional rights in course of investigation, because federal agents do not possess discretion to commit such violations), *cert. denied,* 479 U.S. 849 (1986), *see also Thames Shipyard and Repair Co. v. United States,* 350 F.3d 247, 254-55 (1st Cir. 2003) (citing cases); *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (finding the discretionary function exception inapplicable where the complaint alleged that defendants negligently and intentionally promulgated discriminatory, unconstitutional policies that would result in false arrests, unlawful detentions and unlawful searches).

  Furthermore, as the Supreme Court of the United States has made clear, the discretionary function exception is simply inapplicable when the government violates a specific mandatory requirement.  *See United States v. Gaubert*, 499 U.S. 315, 324 (1991) ("If [a federal] employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy."); *Berkovitz v. United States*, 486 U.S. 531 (1988) ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow").  *See also Dickerson, Inc. v. United States*, 875 F.2d 1577, 1581 (11th Cir. 1989) (holding the discretionary function exception inapplicable where the Defense Property Disposal Service (DPDS), violated a policy requiring it to

7

retain responsibility over disposal of certain toxic waste by delegating such responsibility to independent contractors).

Internal guidelines can constitute actionable source of mandatory duty. *See, e.g., Gaubert*, 499 U.S. at 324. On May 30, 2002, Attorney General Ashcroft issued guidelines entitled, "The Attorney General's Guidelines on General Crimes, Racketeering, Enterprise and Terrorism Enterprise Investigations" ("Attorney General Guidelines") which remain in force and effect.[3] In relevant part, the Attorney General Guidelines state:

> The law enforcement activities authorized by this Part do not include maintaining files on individuals solely for the purpose of monitoring activities protected by the First Amendment or the lawful exercise of any other rights secured by the Constitution or laws of the United States. Rather, all such law enforcement activities must have a valid law enforcement purpose as described in this Part, and must be carried out in conformity with all applicable statutes, Department regulations and policies, and Attorney General Guidelines.

Attorney General Guidelines, VI. (C)(1) (excerpt attached hereto as Exhibit I). Similarly, the Privacy Act mandates for each agency that maintains a system of records, that it:

> maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity.

5 U.S.C. 522a(e)(7). Therefore, by its own mandate -- *via* federal statute and Attorney General Guidelines promulgated to effectuate rights secured by the Constitution -- the United States government explicitly proscribes the activities engaged in by the federal defendants here and places them outside their discretion.

---

[3] The Attorney General Guidelines are revisions to those promulgated by Attorney General Levi, entitled, "Guidelines on Domestic Security Investigation," in 1976. The first set of guidelines were created as a response to reports detailing the Agency's ignominious and well-documented history of spying on U.S. citizens who engage in First Amendment protected activity. *See, e.g.*, Final Report of the Select Committee to Study Governmental Operations, Senate Report No. 94-755, 94th Congress, 2d Session, April 26, 1976 (the "Church Committee Report'). Indeed, the actions of the FBI at issue in this Complaint are precisely the kinds of activities that these guidelines were created to prevent.

In any case, a decision precluding plaintiff's claim pursuant to the discretionary function exclusion is premature without discovery to explore the existence of internal government policies. *See Ignatiev v. United States*, 238 F.3d 464, 466-467 (D.C. Cir. 2001) (plaintiffs were permitted to pursue discovery to determine existence of internal governmental policies that would render actions nondiscretionary where plaintiffs alleged that the conduct of FBI officers outside of their authority or against internal mandates or guidelines). As there has been no actual "factual attack" at this juncture, and because one would be premature without discovery and a full evidentiary hearing, the burden of proving the applicability of the discretionary function exception to the FTCA falls on the United States. *Acosta v. United States*, 207 F. Supp. 2d 1365, 1371 (D. Fla. 2001) .   **B** .

**The Due Care Exception Does Not Apply to this Case.**

The due care exception is similarly inapplicable. As with the discretionary function exception, the defendant improperly limits this inquiry to the actions of FBI agents at the point of their entry into Mr. Lippman's vehicle and, in doing so, ignores the Complaint's emphasis on the overall scheme wherein Mr. Lippman and his vehicle were identified in North Carolina and followed across four states solely because of a history of exercising First Amendment rights, culminating in the breaking into the vehicle without any probable cause or other legal justification.[4]

---

[4]Significantly, among the new "facts" defendant scatters throughout its Motion is a repeated reference to a "belief" that plaintiff's vehicle contained a bomb. *See* DE 78 at 16, 25, 27. But defendant never explains the basis for such a supposed "belief" -- and, until the very end of the Motion, never even acknowledges that, to legally justify a search, such a "belief" must meet the standard of probable cause (*see id*. at 27-28). Furthermore, when defendant does finally mention "probable cause," all defendant says is that "the probable cause determination [was] made by the agency who requested the assistance of the [FBI] team," *id.* at 27, and the FBI agents were "entitled to rely upon th[at]...determination," *id.* at 28. But this assertion -- which is not even supported by Agent Battiste's Declaration -- still provides no description of the factual basis for such a supposed "determination"; nor does it state that such a basis was ever communicated to the FBI team. As the Eleventh Circuit recently made clear, "the fellow-officer rule" -- which "allows a fellow officer to rely on the probable cause determination of another" in certain circumstances, "requires that the fellow officer actually communicate...the basis for the probable cause" to the officers who act. *Killmon v. City of Miami*, 2006 WL 2769526 at *3 (11th Cir., 9/27/06) (emphasis added). Here, where defendant does not even allege such a communication occurred, its conclusory reference to "probable cause" certainly does defeat plaintiff's claims -- especially at this juncture when the Court must accept the facts as pleaded in the Complaint.

9

"'Due care' implies at least some minimal concern for the rights of others." *Hatahley v. United States*, 351 U.S. 173, 181 (1956) (finding that the exception did not apply where government agents proceeded with complete disregard for the property rights of the petitioners). Here, the FBI's surveillance and later search and seizure of Mr. Lippman's vehicle and the personal possessions therein -- beyond being illegal and unconstitutional -- cannot be construed as reasonable. *See De Bonis v. United States*, 103 F. Supp. 123, 125-126 (D. Pa. 1952) (finding that the federal tax agents' illegal seizure of plaintiff's vehicle without a warrant was a "brazen and unwarranted" act). The search and seizure of plaintiff's vehicle cannot be viewed in isolation; doing so improperly limits plaintiff's complaint and ignores the FBI's initial, extensive surveillance leading to and causing the ultimate search. *Cf. Hydrogen Technology Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987), *cert. denied.*, 486 U.S. 1022 (1988) (applying the due care exception while clarifying that plaintiff's negligence claim was not related to the FBI's initial decision to examine plaintiff's generator, but was limited to the FBI's selection of a destructive examination procedure as opposed to a simple test firing). The reasonableness test applied by the First Circuit in *Hydrogen Technology* considered the status of the defendant and that of the plaintiff. 831 F.2d at 1164. In *Hydrogen Technology*, as here, the federal actors were FBI agents; however, in *Hydrogen Technology*, the plaintiff was a subject of a criminal investigation of wire fraud, where here the plaintiff was spied upon only because of his protected First Amendment activity.[5]

### C. The Customs Exception Does Not Apply to this Case.

The torts alleged in the Complaint relating to plaintiff's claim under the FTCA are invasion of privacy by intrusion, trespass to chattels and negligence. (DE 66, ¶ 97-98). The customs exception does not apply to any of plaintiff's claims for two reasons.

---

[5]Even if the "due care" standard were applicable here, that would not provide a basis to dismiss the Complaint but, at most, would raise a dispute of fact. While defendant asserts that the FBI bomb squad "exercised...due care" in searching plaintiff's vehicle, DE 78 at 16; *see also id.* at 22, as discussed in Section IV.A., below, the facts as alleged in the Complaint describe a search and seizure that was conducted without due care, as well as a preceding surveillance that was conducted without due care.

First, plaintiff's intentional tort claims do not fall within the intentional tort exception under 28 U.S.C. § 2680(h). Neither invasion of privacy by intrusion nor trespass to chattels are enumerated in 28 U.S.C. 2680(h), the subsection that lists certain intentional tort exceptions to the FTCA.[6] *See Raz*, 343 F.3d at 948, *citing, e.g., Birnbaum v. United States*, 588 F.2d 319, 328 (2nd Cir. 1978) (torts of trespass and invasion of privacy do not fall within intentional-torts exception). The interplay between Section 2680(h) (intentional tort exception) and Section 2680(c) (customs exception) was addressed in *Vu v. Meese,* 755 F. Supp. 1375 (D. La. 1991), which held that Section 2680(h) trumps Section 2680(c). In *Vu*, plaintiff had alleged intentional infliction of emotional distress and wrongful death in connection with activities of U.S. Coast Guard officers who were engaged in the seizure of a fishing vessel while enforcing federal drug laws. 755 F. Supp. 1375. The *Vu* court found, as a matter of statutory construction, that the exception in §2680(c) covers claims arising out of the negligent actions of customs officers in detaining goods or merchandise, and any exception which might be due those same officers for intentional acts would have to come within the exceptions listed in § 2680(h). *Id.* at 1386. The court noted:

> [E]very single one of the exceptions to the FTCA in § 2680 begins with the words 'Any claim.' Had Congress intended to include intentional acts in the phrase 'any claims' which introduces all exceptions to the FTCA enumerated in § 2680, then § 2680(h) and its specific limitations would not be needed and would be mere surplusage.

---

[6]The intentional tort exception provides, in full, that the FTCA shall not apply to:
>Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso [March 16, 1974], out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 USCS § 2680(h).

11

*Id.* Under *Vu,* then, the customs exception simply does not apply to the intentional torts of invasion of privacy and tresspass to chattels.

Second, plaintiff's negligence claim does not "arise out of" the detention of goods; rather, it arises out of a series of events that began long before the search and seizure as well as encompassing the search and seizure itself. This distinction comports with the vast majority of case law applying the customs exception in situations involving law enforcement detention of property where the government negligently, improperly or mistakenly -- rather than intentionally -- detained plaintiff's property. Indeed, in *Kosak v. United States*, 465 U.S. 848 (1984), the plaintiff's claim was for damages in the negligent handling of his art collection while seized by Customs officials when he was mistakenly suspected of smuggling the collection into the country. In *O'Ferrell v. United States*, 253 F.3d 1257 (11th Cir. 2001), the plaintiff's property was detained and not returned after the O'Ferrells mistakenly or negligently became the target of FBI investigation. Even though *O'Ferrell* includes a claim for conversion, both *O'Ferrell* and *Kosak* protect the actions of government officials as a result of their negligent conduct in investigating individuals. Here, the search and seizure which led to the detention of plaintiff's property was initiated as a result of a series of intentional, knowingly unreasonable decisions to single out and spy on plaintiff.

In short, plaintiff's claims do not simply "arise out of" or "in respect of" the inspection, seizure, or detention of goods at issue; rather they "arise out of" or "in respect of" the overall scheme of surveillance detailed herein. The "detention of goods" exception provides that the FTCA shall not apply to "any claim *arising in respect* of the assessment or collection of any tax or customs duty, or the detention of any goods . . . by any officer of customs or excise or any other law-enforcement officer." 28 U.S.C. § 2680(c) (emphasis added). The Supreme Court has explained that "the crucial portion of the provision … 'any claim arising in respect of' the detention of goods means any claim 'arising out of' the detention of goods." *Kosak,* 465 U.S. at 854. Here, specifically, the damages plaintiff seeks (*see* DE 66, ¶ 98) should not be viewed as "arising out of" the search and seizure, as

12

they arise out of the entire scheme of surveillance endured by plaintiff that ultimately resulted in the search and seizure of and damage to his personal property.

### IV. THE COMPLAINT STATES A CAUSE OF ACTION FOR NEGLIGENCE, INVASION OF PRIVACY BY INTRUSION AND TRESPASS TO CHATTELS UNDER FLORIDA LAW.

**Preliminary statement:**

The FTCA was "designed to provide redress for ordinary torts recognized by state law." *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004) (quoting *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) (internal quotation and citation omitted)). The FTCA authorizes private tort actions against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Supreme Court has interpreted these words to "mean what they say, namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort." *United States v. Olson*, 126 S. Ct. 510, 511 (2005) (adding emphasis) (reversing Ninth Circuit precedent permitting courts in certain circumstances to base a waiver upon a finding that local law would make a state or municipal entity liable). Further, the Supreme Court indicated that this requires analogizing the government act to that of a private citizen, stating:

> The [FTCA] makes the United States liable "in the same manner and to the same extent as a private individual under *like circumstances*." 28 U.S.C. § 2674 (emphasis added). As this Court said in *Indian Towing*, the words "like circumstances" do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield.

*Olson*, 126 S. Ct. at 513 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). Although the FBI's surveillance began in North Carolina, we apply Florida tort law because the surveillance extended into Florida, and because the search, seizure and injury occurred in Florida. *See Stone*, 373 F.3d at 1130.

While not disputing the applicability of Florida tort law, defendant argues that "the United States may invoke any defenses available to individual law enforcement officers under similar circumstances, in the law of the state." DE 78 at 19. But that is not a correct statement of the law.

13

The FTCA does not carve out a special exception for "law enforcement officers"; rather, as *Olson* explains, the United States must be treated in an FTCA action just as a private person would be treated -- not as a publicly-acting law enforcement officer would be treated.[7]

### A.   The Complaint states a cause of action in negligence.

"To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). When an individual undertakes "to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking "that undertaking" confers a duty of reasonable care, because it thereby creates a foreseeable zone of risk." *Stone*, 373 F.3d at 1130 (quoting *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 66-67 (Fla. 1996) (internal citations omitted)).

Here, the Complaint clearly sets out that the actions that the United States undertook in great detail, even citing to a report prepared by an FBI agent:

> [the vehicle] was surveilled from North Carolina…. It was then decided to conduct 8 point vehicle check, which was clear, K-9 search which was clear, use HRM/Pageresque -- which was clear and finally the robot to remove the contents from the rear of the pick-up truck. All removed items were manually searched as was the interior of the cab.

DE 66, ¶ 35. As alleged, the FBI agents undertook to surveil and follow Mr. Lippman without exercising any care to ensure that they had a valid basis to do so, and ultimately to search and seize his vehicle and property again without exercising any care -- either to ensure that they had a valid

---

[7]The four cases which defendant cites, DE 78 at 19, for its "defenses-available-to individual-law-enforcement-officers" proposition all predate *Olson,* which was decided in 2005. Moreover, all four cases deal with the specific torts of "assault, false imprisonment and false arrest," which have a special excluded-status under §2680(h); they do not deal with negligence or the particular intentional torts at issue here -- invasion of privacy and trespass to chattels. For these reasons, defendant's discussion of "defenses-available-to individual-law-enforcement-officers," DE 78 at 10-21, is simply irrelevant.

basis to enter the vehicle[8] or in the way that they broke into the vehicle and disturbed the personal belongings inside.[9]  In analogizing the agents behavior to that of a private person, one thinks of an individual who spies upon another and then breaks into his vehicle.  Clearly, <u>such an individual has undertaken affirmative acts that create a duty of care</u>.  *See Olson,* 126 S. Ct. at 513, *quoting Indian Towing*, 350 U.S. at 64-65 ("It is 'hornbook law'...that such a ["private"] person [who undertakes to act] "must perform his 'good Samatarian' tasks in a careful manner'").  Thus, insofar as the defendant claims that defendant has no duty of care to plaintiff, *see* DE 78 at 21- 22, defendant is simply wrong.[10]

> B.      The Complaint states a cause of action in invasion of privacy.

While not disputing that Florida law recognizes the tort of invasion of privacy by intrusion into solitude and seclusion, defendant reads that tort over-restrictively as limited to the situation in which "a person intentionally intrudes within the plaintiff's '<u>home</u>' or 'quarters.'"  DE 78 at 24 (emphasis added).  To be sure, one of the precedents defendant cites, *Allstate Ins. Co. v. Ginsburg*, 863 So. 2d 156 (Fla. 2003), uses the term "home," but it does so by way of <u>example</u>, stating that one

---

[8]Indeed, if defendant's "Facts" are to be believed, the break-in occurred on the say so of another that a "bomb" was "believed" to be in the vehicle (*see, e.g.* DE 78 at 27) -- without the FBI agents ever checking into or learning the basis of that "belief."

[9]Contrary to defendant's assertion that "only the locks were cut to afford entry into the vehicle," DE 78 at 22 -- again, an inappropriate assertion of fact which should be ignored -- the Complaint alleges that "[b]oth passenger-cab windows were broken out,...both padlocks were broken off [, and] [i]nside the vehicle, all of [plaintiff's] personal belongings were turned upside down, opened and scattered: the computer was outside of its case, files were dumped out in all directions, glass was all over the seat, a flashlight and plastic drawers were broken, and the gas cap was missing." DE 66, ¶37.

[10]The cases cited by defendant for the proposition that "the duty to protect citizens and enforce the law is one owed generally to the public" and not owed to an individual like plaintiff,  DE 78 at 21, are simply irrelevant as plaintiff has not alleged a breach of a duty to protect the public; he has alleged a breach of the duty to act with due care.  Similarly, the conclusion of the court in *Ware v. United States*, 838 F. Supp. 1561, 1563 (M.D. Fla, 1993), cited by defendant, *id.* at 22, that the law imposes "no liability upon a private person for...negligence in the continuing investigation of a criminal prosecution of a crime..." is irrelevant as plaintiff has not alleged negligence in such an endeavor; he has alleged negligence in a course of conduct which commenced with spying upon him and culminated in the breaking into and damaging of his vehicle and the disturbance of his personal possessions.

category of invasion of privacy consists of intrusion upon solitude or seclusion "<u>as by</u> invading the home..." *Id.* at 160-161 (emphasis added).  Furthermore, two precedents that *Allstate* relies upon as its principal authority -- *Loft v. Fuller*, 408 So.2d 619 (Fl. 4th DCA 1981) and *Agency for Health Care Administration v. Associated Industries of Florida, Inc.*, 678 So. 2d 1239 (Fla. 1996) -- see *Allstate,* 863 So. 2d at 161, 162, do not limit the tort to home-invasion:  *Loft* merely characterizes the tort as "[i]ntrusion, *i.e.*, invading plaintiff's physical solitude or seclusion," without adding on any examples or qualifiers at all.  408 So. 2d at 622.  *Agency* makes reference to "intruding into one's private quarters,"[11] but more importantly cites as its source the Florida Supreme Court decision in *Forsberg v. Housing Authority of Miami Beach*, 455 So. 2d 373, 376 (Fla. 1986), which in turn cites to the Restatement (Second) of Torts, §652B, as its authority.  That section of the Restatement defines the tort of "Intrusion Upon Seclusion" as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another <u>in his private affairs or concerns</u> is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.  [Eemphasis added].

Plainly, this definition of "intrusion upon seclusion" -- identifying the arena of the seclusion as the victim's "private affairs or concerns" -- which the Florida Supreme Court endorsed in *Forsberg* and from which it has never retreated, provides more than ample room for the allegations made in this Complaint.

When defendant asserts that it "has located no Florida case in which the court sustained a claim of invasion of privacy by intrusion into a plaintiff's unoccupied vehicle,"DE 78 at 24, defendant is, once again, re-framing, and, indeed, narrowing, plaintiff's claims to suit its purposes.  Viewed as a whole course conduct -- from surveillance through breaking into the vehicle and disturbing plaintiff's personal possessions -- the FBI agents acted to "intrude[ ], physically [and] otherwise, upon the solitude or seclusion of [plaintiff] in his private affairs [and] concerns." Indeed,

---

[11]The term "quarters" is far more general than the term "home" and while it can mean ""living accommodations," it can also mean a "a point, direction, or place not definitely identified," Merriam-Webster Dictionary, 2000 -- a concept broad enough to encompass a person's location wherever that may be.

16

a similar situation was recognized in *Goosen v. Walker*, 714 So.2d 1149, 1150 (Fla. 4th DCA 1998), where a Florida court of appeal had no trouble in recognizing that "unreasonable surveillance, even if conducted in a public or semi-public place, may nevertheless rise to the level of invasion of privacy based on intrusion upon seclusion."[12]

Nor can defendant escape invasion-of-privacy liability by simply proclaming that an "emergency" existed. In the several cases defendant cites for the application of what defendant terms "the exigency rule," *see* DE 78 at 24-26, there was a specific finding of probable cause or other clearly articulated reasonable grounds to believe that an "emergency" existed, not just a declaration of "emergency" by fiat. *See, e.g., United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002) (when seeking to validate a search "based upon the existence of an emergency, as with any other situation falling within the exigent circumstances exception, the Government must demonstrate both exigency and probable cause" (emphasis added)). As discussed above in *note* 4, even if it were appropriate to consider factual proffers by defendant at this stage of the proceeding -- which it is not -- defendant provides absolutely no factual support for its assertion that a "probable cause determination [was] made by the agency who requested the assistance of the [FBI] team," *id.* at 27; nor does it even purport to describe the basis for such a supposed "determination," or to claim that such a basis was ever communicated to the FBI team, as is required under "the fellow-officer rule." *See Killmon v. City of Miami*, 2006 WL 2769526 at *3.

In short, plaintiff's allegations adequately state a cause of action in the tort of invasion of privacy by intrusion into solitude and seclusion, and defendant's effort to state contrary allegations -- which should be ignored at this stage in any event -- fails to refute plaintiff's claims.

---

[12]*Goosen* -- a far more recent case than the several cases cited by defendant for the proposition that invasion of privacy in regard to surveillance cannot lie absent allegations that the surveillance was "vicious and malicious," *see* DE 78 at 26 -- does not require that viciousness and malice be alleged.

### C. The Complaint states a cause of action in trespass to chattels.

Defendant does not claim that the Complaint fails to plead a cause of action in the tort of trespass to chattels. Nor could defendant make such a claim since the allegations in the Complaint -- that "by searching and seizing [plaintiff's] vehicle and his personal property inside the vehicle, intentionally and without consent and/or justification took possession of Lippman's chattel, [the FBI agents] damaged that chattel and deprived [plaintiff] of the use of his chattel for a substantial period of time (DE 66, ¶ 97(d)) -- plainly recite the elements of trespass to chattels under the law of Florida. *See* 55 Fla. Jur.2d *Trespass* § 3 (1984) (trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification); *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. 4th DCA 1998) (plaintiff's complaint alleging that defendant entered his apartment without permission, ransacked his personal property, and deprived him of the use of his apartment and his personal property sufficiently alleged tort of trespass to chattels).

Rather, defendant attempts to escape liability by arguing that on the "facts," the actions of the FBI agents were "justified" and "privileged" (DE 78 at 26-27) because "under the exigent circumstances attendant during the search for an explosive device, the conduct of the team was reasonable" (DE 78 at 27). But in making this argument, defendant once again is trying to inject new "facts" into the case, not alleged by plaintiff. For the same reasons set forth in section **B** and *note* 4, above, the defendant cannot -- particularly at this stage of the proceeding when the Court must accept the Complaint as pleaded and when the defendant's assertions of "facts" do not even meet the "fellow officer rule" -- rely on a claim of "justification" or "privilege." Indeed, under the "privilege" rule cited by defendant (DE 78 at 26) -- namely, that "One is privileged to commit an act which would otherwise be a trespass to a chattel...if he is acting in discharge of a duty or <u>authority</u> created by law ..."(Restatement (Second), Torts s 265 (emphasis added) -- the Complaint's allegations that the FBI agents conducted the search and seizure of plaintiff's personal property <u>without probable cause and/or legal justification</u> clearly vitiate any arguable claim of "authority" to trespass upon plaintiff's chattels. Accordingly, the cause of action of trespass to chattels stands.

**WHEREFORE,** for all the foregoing reasons, plaintiff David Lippman respectfully requests that this Court deny defendant United States Motion to Dismiss.

Respectfully submitted,

| | |
|---|---|
| COUNSEL FOR PLAINTIFF | Jeanne Baker |
| Rosalind J. Matos, Esq. | Jeanne Baker, Attorney at Law, PA |
| Florida Bar No. 474967 | Florida Bar No. 0880700 |
| South Florida Staff Counsel | Cooperating Attorney for the American Civil |
| ACLU Foundation of Florida, Inc. | Liberties Union Foundation of Florida, Inc. |
| 4500 Biscayne Blvd., Ste. 340 | Miami Chapter |
| Miami, FL 33137-3227 | 2937 SW 27th Avenue |
| 786-363-2700 (2712) (phone) | Miami, FL 33133 |
| 786-363-1106 (facsimile) | 305-443-1600 |
| rmatos@aclufl.org | 305-495-9666 (fax) |
| | jbaker@fourdefenders.com |

By:  /s/ Jeanne Baker
           Jeanne Baker

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 4, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ Jeanne Baker
      Jeanne Baker

# SERVICE LIST *LIPPMAN V. CITY OF MIAMI*
## No. 06-21124

Beverly A. Pohl
bpohl@broadandcassel.com
Broad and Cassel
100 S.E. Third Avenue, Ste. 2700
Fort Lauderdale, Florida 33394
Ph:     (954) 764-7060
Fax:    (954) 713-0962
Counsel for Broward Sheriff's Office
Defendants

Jeanne Baker
jbaker@fourdefenders.com
Jeanne Baker, Attorney at Law, P.A.
2937 SW 27th Avenue
Miami, Florida 33133
Ph:     (305) 443-1600
Fax:    (305) 445-9666
Counsel for Plaintiff

Rosalind J. Matos
rmatos@aclufl.org
South Florida Staff Counsel
ACLU Foundation of Florida, Inc.
4500 Biscayne Boulevard, Suite 340
Miami, Florida 33137-3227
Ph:     (786) 363-2712
Fax:    (786) 363-1106
Counsel for Plaintiffs

Henry Hunnefeld
hjhunnefeld@ci.miami.fl.us
Assistant City Attorney
City of Miami
444 S.W. Second Avenue, Suite 945
Miami, Florida 33130
Ph:     (305) 416-1800
Fax:    (305) 416-1801
Counsel for City of Miami Defendants

AUSA Barbara L. Petras
Barbara.Petras@usdoj.gov
500 East Broward Boulevard, Suite 700
Ft. Lauderdale, FL 33394
Ph:     (954) 356-7255, Ext. 3609
Fax:    (954) 356-7180
Counsel for Federal Defendants