UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21124-CIV-MARRA/JOHNSON

DAVID LIPPMAN,

  Plaintiff,

vs.

THE CITY OF MIAMI et al.,

  Defendants.

_____/

## OPINION AND ORDER

  This cause is before the Court upon Defendant United States' Suggestion of Dismissal[1] as to the Doe Defendants [DE 136].  The Court has carefully considered the motion and is otherwise fully advised in the premises.

### I.  Background

  According to the Second Amended Complaint ("SAC"), Plaintiff David Lippman ("Plaintiff" "Lippman") was working as a freelance reporter for Free Speech Radio News, when he traveled from North Carolina to Miami, Florida to cover the Free Trade Area of the Americas ("FTAA") summit meetings in November of 2003.  (SAC ¶ ¶ 29-30.)  Prior to the FTAA summit meetings, the City of Miami and the Miami Police Department ("MPD") planned for anticipated protests against the FTAA. (SAC ¶ 21.)  The MPD assembled nearly 40 different law enforcement agencies from federal, state, county and municipal police departments to be part of the security force.  (SAC ¶ 22.)  The Federal Bureau of Investigation ("FBI") was one of the

_____

[1] Because Lippman has not served the "Doe Defendants," the United States does not appear on their behalf but instead suggests the dismissal of these Defendants under its authority "to attend to the interests of the United States" pursuant to 28 U.S.C. § 517.

federal agencies that worked in conjunction with the City of Miami during the FTAA demonstrations. (SAC ¶ 28.)

While traveling from North Carolina to Miami, Lippman was "surveilled" by the FBI because he was "known protestor w/history." (SAC ¶ 30; City of Miami documents, Ex. B, attached to SAC.)    Up to eight FBI agents conducted, participated in conducting, and/or supervised the surveillance. (SAC ¶ 30.)  The FBI has a history of "tracking down" and "surveilling" individuals who participate in protests or express dissenting views. (SAC ¶ 28.)

On November 19, 2003, Lippman arrived in Miami and parked his 1991 Nissan pickup truck in a parking lot at Northeast 2nd Street and Northeast 2nd Avenue so he could approach the demonstrations on foot. (SAC ¶ 32.)  Left in his car were Lippman's computer, some clothing and a guitar. (SAC ¶ 32. )   Later that day, Lippman returned to the parking lot and saw his truck being towed away. (SAC ¶ 33.)  An employee of the parking lot told Lippman that the MPD had reported that the FBI had instructed them to check Lippman's truck for a bomb. (SAC ¶ 34.) Officers from three agencies, the Broward County Sheriff's Office ("BSO"), the FBI and the MPD, performed a search and seizure of Lippman's truck. (SAC ¶ 35.)

After much difficulty, Lippman located his truck and recovered it from the MPD. (SAC ¶ 38.)  Both passenger cab windows of the truck were broken out, and in the back of the truck, where the camper top closes, both padlocks were broken off. (SAC ¶ 38.)  Inside the truck, all of Lippman's personal belongings were turned upside-down, opened and scattered. (SAC ¶ 38.) The computer left in Lippman's truck was outside of its case, files were dumped out in all directions, glass was all over the seats, a flashlight and plastic drawers were broken and the gas cap was missing. (SAC ¶ 38.)

Lippman suffered consequential damages as a result of losing his truck and the use of his personal property. (SAC ¶ 39.)  He was unable to draft or file a story regarding the FTAA demonstrations, was unable to change clothing, use his personal hygiene items, or play his guitar. (SAC ¶ 39.)  Lippman also experienced the anxiety of not knowing whether he would ever recover his truck, computer, guitar and other personal belongings. (SAC ¶ 39.)  No bomb, contraband or any illegal substance was found in Lippman's truck nor were any criminal charges brought against Lippman. (SAC ¶¶ 40-41.)

The FBI had no probable cause or other legal justification to conduct surveillance of Lippman and its action violated his First Amendment rights to free press, speech and assembly and his Fourth Amendment right to be free from unreasonable searches and seizures. (SAC ¶ 31.)  Furthermore, the FBI had no probable cause or other legal justification to search, seize or damage Lippman's property and its actions violated his Fourth Amendment right to be free from unreasonable search and seizure. (SAC  ¶ 42.)  As a result of learning that the FBI conducted surveillance which led to search, seizure and damage to his property, Lippman has been chilled in the exercise of his First Amendment rights. (SAC  ¶ 45.)  Lippman feels intimidated by the police and now exercises caution and reservation before attending or participating in political demonstrations. (SAC  ¶ 45.)

With respect to the Doe Defendants, the Complaint alleges a violation of the Federal Tort Claims Act (Count VI) and a Bivens claim for violation of Lippman's First, Fourth and Fifth Amendments rights (Count IX).  The Bivens claim alleges that the Doe Defendants violated Lippman's rights by "illegally spying upon and following him from North Carolina to Miami based upon the allegation that he was a 'known protestor w/history' and without reasonable or

individualized suspicion." (SAC  ¶ 114.)

The United States suggests dismissal of Count IX with respect to the Doe Defendants on several grounds. First, the United States argues that fictitious party practice is not permitted in federal court. (Mot. at 5.)  Second, the United States posits that the Complaint is conclusory and lacks the required specificity needed in light of the defense of qualified immunity. (Mot. at 6.) Finally, the United States claims that the allegations do not give rise to a constitutional violation because surveillance of an automobile is not a Fourth Amendment or First Amendment violation. (Mot. 3-7.)

In response, Lippman points out that the United States agreed to Lippman's use of keeping the Doe Defendants' names confidential. (Resp. at 3-4.)  Lippman also counters that the Complaint's allegations are adequate and, in the alternative, requests limited discovery to ascertain the "exact actions which the Doe Defendants engaged in" (Resp. 6-8.)  With respect to the alleged First Amendment violations, Lippman claims that the very act of spying is a constitutional violation and that the surveillance was retaliation for the exercising of his First Amendment rights. (Resp. 9-10.)  Additionally, Lippman points out that surveillance by the Doe Defendants led to the search and seizure of his truck by the named FBI agents. (Resp. at 11.)  As for the Fourth Amendment claim, Lippman states that only the United States knows the method by which the surveillance was conducted and that dismissal of the claim should not occur until he has had the opportunity to conduct discovery. (Resp. 12.)

In reply, the United States contends that Lippman has not met his burden to show that the surveillance by the Doe Defendants caused the search of his truck by the named FBI agents. (Reply at 3.)  Lastly, the United States objects to discovery, claiming that it deprives the Doe

4

Defendants of the defense of qualified immunity.

## II.  Legal Standard

Until the recent Supreme Court decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. —,
127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be
dismissed for failure to a state claim unless it appears beyond a doubt that the plaintiff could
prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v.
Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1022 (11th Cir.
2001).  However, pursuant to <u>Twombly</u>, to survive a motion to dismiss, a complaint must now
contain factual allegations which are "enough to raise a right to relief above the speculative level,
on the assumption that all the allegations in the complaint are true."  127 S. Ct. at 1965.  "While
a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
requires more than labels and conclusions, and a formulaic recitation of the elements of a cause
of action will not do." <u>Id.</u> at 1964-65.  Taking the facts as true, a court may grant a motion to
dismiss when, "on the basis of a dispositive issue of law, no construction of the factual
allegations will support the cause of action."  <u>Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas
Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. Discussion

The Court begins its analysis by addressing the United States' argument that the dismissal
of the Doe Defendants is required because fictitious party practice is not permitted in federal

courts.[2]  Lippman points out, and the United States does not dispute, that the United States

agreed to disclose the names of the Doe Defendants to Plaintiff should the Court conclude that

Lippman has stated a valid cause of action for surveillance. (Resp. at 3.)  Given these

representations made by the United States, this is not a ground for dismissal.

Next, the Court addresses whether the SAC alleges a constitutional violation.  Turning

first to the alleged Fourth Amendment violation, the Court finds that it does not.  In support of

those allegations, the SAC simply states that Lippman was under surveillance during his drive

from North Carolina to Miami, Florida. As the United States correctly points out, "[a] person

traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in

his movements from one place to another."  United States v. Knotts, 460 U.S. 276, 281 (1983);

see also United States v. Garcia, 474 F.3d 994, 997 (7th Cir. 2007) (following a car on a pubic

street is not a search within the meaning of the Fourth Amendment).  Lippman insists, however,

that this claim ought to survive until he can conduct discovery to determine the method by which

the surveillance was conducted.  According to Lippman, discovery could reveal that a beeper had

been installed in his car or that the surveillance intruded into non-public areas. (Resp. at 12.)

The Court rejects this argument.  "The purpose of discovery is to find out additional facts

about a well-pleaded claim, not to find out whether such a claim exists." Abrahams v. Young &

Rubicam, 979 F. Supp. 122, 129 (D. Conn. 1997) quoting Stoner v. Walsh, 772 F Supp. 790, 800

(S.D.N.Y. 1991) (internal quotations marks omitted); accord American Communications Ass'n,

_____

[2] Although the United States' Suggestion of Dismissal states that it only seeks dismissal
with respect to Count IX, this argument would apply to both counts brought against these
Defendants.  Given that the Court rejects this argument and that the United States does not
advance any additional arguments to dismiss the Federal Tort Claims Act (Count VI) in this
application, this Order will not provide further discussion on the Federal Tort Claims Act claim.

6

Local 10, I.B.T. v. Retirement Plan for Emp. of RCA Corp. and Subsidiary Cos., 488 F. Supp. 479 (S.D.N.Y. 1980); see also Collins v. Walden, 834 F.2d 961, 965 (11th Cir. 1987) ("filing a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence"). Indeed, "discovery should follow the filing of a well-pleaded complaint" and "is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." Kaylor v. Fields, 661 F.2d 1177, 1184 (8th Cir. 1981). Here, the facts as pled simply do not give rise to a claim for a violation of the Fourth Amendment. Hence, this claim is dismissed.

In support of its argument that no violation of the First Amendment occurred, the United States cites Laird v. Tatum, 408 U.S. 1 (1972). In that case, the United States Supreme Court held that the Department of Army's surveillance of demonstrators did not chill their exercise of First Amendment rights. Id. at 10. Pivotal to that conclusion was the finding that the surveillance was lawfully conducted and that the demonstrators in Laird suffered no direct or indirect injury or threat of future injury. Id. at 6, 11-12. The Court finds the application of Laird appropriate to this case. The allegations against the Doe Defendants are limited to surveillance only, and as evidenced by Plaintiff's concession, the Doe Defendants did not participate in the search, seizure and damage to his property. (Resp. at 10-11.) Thus, the alleged violation of the First Amendment, i.e., surveillance, falls squarely under the facts of Laird.

Nonetheless, Lippman attempts to distinguish Laird, claiming that he suffered a chilling effect on his First Amendment rights "by the entire course of the FBI conduct as a whole" and suffered additional injuries consisting of physical damage to his truck and interference with his

work as a reporter.[3] (Resp. at 11.)   Significantly, these injuries are not alleged to have been committed by the Doe Defendants.  Nor does the Court find persuasive Plaintiff's reliance on Bennett v. Hendrix, 423 F.3d 1247 (11ᵗʰ Cir. 2005).  In that case, the Court found that retaliatory conduct consisting of a "prolonged and organized campaign of harassment by local police officers" that included those officers "follow[ing]," "pull[ing] over," "cit[ing]," "intimidat[ing]," or "otherwise harass[ing]" the plaintiffs were allegations that would deter a person of ordinary firmness from the exercise of First Amendment rights.  Id. at 1254.  Here, the allegations are devoid of any facts approaching this level of harassment.[4]

Thus, the Court concludes that the SAC does not allege a First Amendment violation by the Doe Defendants.  No allegations provide a direct nexus between the surveillance by the Doe Defendants and the decision by the named FBI Defendants to search and seize the truck  That stated, the Court recognizes that, an allegation that the Doe Defendants had direct involvement that led to the search and seizure of the truck could give rise to a First Amendment violation.  Of course, these are not the allegations pled.  Nonetheless, to the extent that Lippman can allege, in good faith and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure, a First Amendment claim against the Doe Defendants based on direct involvement in the search and seizure of his truck, Lippman may amend the SAC.

_____

[3] In addition, Lippman points to guidelines promulgated by the Attorney General and the Privacy Act to demonstrate that the United States government proscribes the activities alleged committed by the Doe Defendants. (Resp. 9-10.)  Even assuming these guidelines and the Privacy Act were violated by the Doe Defendants, such violations do not create a valid claim under the First Amendment.

[4] Bennett also lists several cases concerning similar or less harassing acts.  Id. at 1255. The retaliatory acts in those cases are much more egregious than the facts alleged here.

8

### III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant United States'

Suggestion of Dismissal as to the Doe Defendants [DE 136] is **GRANTED.** Count IX is

dismissed against the Doe Defendants for violations of Lippman's First and Fourth Amendment

rights. Plaintiff is granted leave to amend the First Amendment claim in accordance with the

directive set forth in this Order **within 20 days of the date of entry of this Order**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 23rd day of July 2008.

KENNETH A. MARRA
United States District Judge

9