UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21124-CIV-MARRA/JOHNSON

DAVID LIPPMAN,

    Plaintiff,

vs.

THE CITY OF MIAMI et al.,

    Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon the United States' Motion to Dismiss [DE 137] Count VI of the Second Amended Complaint. The Court has carefully considered the motion and is otherwise fully advised in the premises.

### I. Background

According to the Second Amended Complaint ("SAC"), Plaintiff David Lippman ("Plaintiff" "Lippman") was working as a freelance reporter for Free Speech Radio News, when he traveled from North Carolina to Miami, Florida to cover the Free Trade Area of the Americas ("FTAA") summit meetings in November of 2003. (SAC ¶¶ 29-30.) Prior to the FTAA summit meetings, the City of Miami and the Miami Police Department ("MPD") planned for anticipated protests against the FTAA. (SAC ¶ 21.) The MPD assembled nearly 40 different law enforcement agencies from federal, state, county and municipal police departments to be part of the security force. (SAC ¶ 22.) The Federal Bureau of Investigation ("FBI") was one of the federal agencies that worked in conjunction with the City of Miami during the FTAA demonstrations. (SAC ¶ 28.)

While traveling from North Carolina to Miami, Lippman was "surveilled" by the FBI because he was "known protestor w/history." (SAC ¶ 30; City of Miami documents, Ex. B, attached to SAC.)  On November 19, 2003, Lippman arrived in Miami and parked his 1991 Nissan pickup truck in a parking lot at Northeast 2nd Street and Northeast 2nd Avenue so he could approach the demonstrations on foot. (SAC ¶ 32.)  Left in his car were Lippman's computer, some clothing and a guitar. (SAC ¶ 32. )   Later that day, Lippman returned to the parking lot and saw his truck being towed away. (SAC ¶ 33.)  An employee of the parking lot told Lippman that the MPD had reported that the FBI had instructed them to check Lippman's truck for a bomb. (SAC ¶ 34.)  Officers from three agencies, the Broward County Sheriff's Office ("BSO"), the FBI and the MPD, performed a search and seizure of Lippman's truck. (SAC ¶ 35.)

After much difficulty, Lippman located his truck and recovered it from the MPD. (SAC ¶ 38.)  Both passenger cab windows of the truck were broken out, and in the back of the truck, where the camper top closes, both padlocks were broken off. (SAC ¶ 38.)  Inside the truck, all of Lippman's personal belongings were turned upside-down, opened and scattered. (SAC ¶ 38.)  The computer left in Lippman's truck was outside of its case, files were dumped out in all directions, glass was all over the seats, a flashlight and plastic drawers were broken and the gas cap was missing. (SAC ¶ 38.)  No bomb, contraband or any illegal substance was found in Lippman's truck nor were any criminal charges brought against Lippman. (SAC ¶¶ 40-41.) Lippman alleges the FBI agents knew or should have known that neither Lippman's truck nor its contents posed any threat to persons or property, thus their decision to damage the truck and its contents was unreasonable and in violation of the law. (SAC ¶ 43.)

With respect to the individual FBI agents, the SAC alleges a violation of the Federal Tort

Claims Act ("FTCA"), 28 U.S.C. § 1346 (Count VI), and a Bivens claim (Count IX).  The FTCA claim charges that the actions of the United States, through the action of the FBI agents, constituted negligence, invasion of privacy and trespass to chattels under Florida law. (SAC ¶ 98.)   Lippman claims that the FBI agents owed a duty of reasonable care to him which was violated by the surveillance that culminated in a negligent or reckless search, seizure and damage to his truck and personal property inside the truck. (SAC ¶ 99.)  Lippman additionally asserts these acts by the FBI agents intentionally invaded his privacy by intrusion into his solitude and seclusion, and intentionally took possession of Lippman's chattel, damaged it and deprived him of its use for a substantial period of time. (SAC ¶ ¶ 100-01.)

The United States moves to dismiss the FTCA claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure based on the applicability of several exceptions to the FTCA.  In the alternative, the United States moves for dismissal of the invasion of privacy claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II. Discussion

1.  Subject Matter Jurisdiction

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994).  The FTCA provides a congressional exception to the United States' sovereign immunity for tort claims, under which the government may "be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government." Turner ex rel. Turner v. United States, 514 F.3d 1194 (11th Cir. 2008) quoting Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir.1994) (per curiam).

Specifically, liability exists for the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment. . . ." 28 U.S.C. § 1346(b). Where the FTCA applies, the United States may be liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674. There are, however, several exceptions under the FTCA, which must be strictly construed in favor of the United States with all ambiguities resolved in favor of the Government. Patterson v. Wilder Const. Co., Inc. v. United States, 226 F.3d 1269, 1279 (11th Cir. 2000) citing United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992). When the alleged conduct falls under one of the FTCA's statutory exceptions, the Court lacks subject matter jurisdiction. JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C., 224 F.3d 1260, 1263 (11th Cir. 2000) citing Dalehite v. United States, 346 U.S. 15, 31 (1953) and Boda v. United States, 698 F.2d 1174, 1176 (11th Cir.1983).

According to the United States, the due care, discretionary function, and detention of property exceptions apply. (Mot. at 5-6.) In addition, the United States contends that the allegations relating to negligence fail under the requirements of 28 U.S.C. § 2674.

   A.  Application of 28 U.S.C. § 2674

In addressing the negligence allegations, the Court notes that, under 28 U.S.C. § 2674, the United States can only be liable in the same manner and to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674. The substantive law which governs the lawsuit is "the law of the place where the act or omission occurred."[1] 28 U.S.C. § 1346(b)(1).

The Court begins its analysis by observing that with respect to the duties alleged to have

---

[1] The parties agree that Florida law applies.

been violated by the United States, Florida law does not impose an analogous duty of care on a private party under like circumstances. The alleged acts committed by the FBI agents cannot be equated to any duty of a private citizen under Florida law. See Ware v. United States, 838 F. Supp. 1561, 1563 (M.D. Fla. 1993) (FTCA claim not viable based on allegation that federal agent failed to disclose exculpatory evidence during criminal investigation); see also Caban v. United States, 728 F.2d 68 (2d Cir. 1984) (INS agents immune from false imprisonment/FTCA suit arising out of a detention).

The Court rejects Lippman's invitation to find that Florida law does impose a duty that falls within the purview of the statute. (Resp. at 8.) In making that argument, Lippman cites to United States v. Olson, 546 U.S. 43 (2005). Olson analyzed the tort liability of the United States based on the alleged negligence of federal mine inspectors, and held that federal mine inspectors could be compared to private persons who conduct safety inspections. Olson, 546 U.S. at 47. Based on Olson, Lippman proposes that the Court analogize the behavior of the FBI agents to that of a private person "who spies upon another and then breaks into his vehicle." (Resp. at 9.) The Court rejects this argument because spying and breaking into a vehicle, if actionable, are intentional torts and not acts that give rise to a claim of negligence. Thus, given that there is no analogous liability on the part of a private individual in like circumstances, the Court must dismiss the portion of the FTCA claim relating to negligence. For the benefit of a full record, however, the Court will also discuss whether the negligence allegations state a claim under Florida law.

Florida law is clear that the negligent conduct of police investigations does not give rise to a cause of action for negligence under Florida law because the "duty to protect citizens and

5

enforce the law is one owed generally to the public." Pritchett v. City of Homestead, 855 So. 2d 1164, 1165 (Fla. Dist. Ct. App. 2003); see Everton v. Willard, 468 So. 2d 936, 938 (Fla. 1985) ("[a] law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole"); State v. Kowalski, 617 So. 2d 1099, 1100 (Fla. Dist. Ct. App. 1993) (no recognized legal duty of care arising out of duty to enforce the laws and protect the public safety).  A duty may, however, arise when law enforcement officers become "directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." Pollock v. Florida Dep't of Highway Patrol, 882 So. 2d 928, 935 (Fla. 2004).  Pivotal to the application of the "zone of risk" doctrine is the law enforcement officer's decision to "assume control over a particular situation or individual or group of individuals accompanied by a corresponding duty to exercise reasonable care." Id.; Kaisner v Kolb, 543 So. 2d 732 (Fla. 1989) (officer had duty to protect detained motorist from oncoming traffic); Brown v. Miami-Dade County, 837 So. 2d 414, 418 (Fla. Dist. Ct. App. 2001) (officer conducting sting operation had duty to exercise reasonable care to avoid harm to bystanders).

     The Court concludes that, based on the facts alleged, the zone of risk cases do not apply here.  While Lippman was allegedly placed under surveillance and law enforcement conducted a search and seizure of his truck, there are no allegations that he was placed in danger by the FBI agents.  That argument rejected, the Court is left with Florida law that clearly provides no duty of care to Lippman by the FBI.  Cf. Barnes v. United States, 448 F.3d 1065, 1067 (8th Cir. 2006) (finding when duty is to public, not individuals, the federal government violated no state law duty permitting suit under FTCA).  Hence, the Court finds that the portion of the FTCA claim

relating to negligence is barred by the doctrine of sovereign immunity.

### B. Due Care Exception

Section 28 U.S.C. § 2680(a) states, in pertinent part, that the FTCA does not apply to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." This provision protects the United States from suits based on a federal employee's execution of a statute or regulation. Gaubert, 499 U.S. 315, 322 (1991). The due care exception applies when "a federal statute, regulation or policy specifically proscribes a course of action for an employee to follow . . . as long as the employee has exercised due care in following the dictates of the statute or regulation." Crumpton v. Stone, 59 F.3d 1400, 1403 (D.C. Cir. 1995).

The statute relied upon by the United States is 28 U.S.C. § 533, which authorizes the FBI to "detect and prosecute crimes." According to the United States, conducting a search of a vehicle believed to have a bomb constitutes a duty under the statute. Furthermore, the United States points to Hydrogen Tech. Corp v. United States, 831 F.2d 1155 (1st Cir. 1987) in support of its argument that the search of Lippman's truck was reasonable given that law enforcement officials faced a potential bomb threat and a search of the truck was the only way to ensure that a bomb would not explode in the parking garage. (Mot. at 8-9.) In that case, a FTCA claim arose from the FBI's seizure and dismantling of a purported hydrogen generator owned by the plaintiff during the FBI's investigation into fraud. That court applied a reasonableness analysis to the FBI's acts, i.e., "what would the reasonable law enforcement agency have done under the circumstances." Id. at 1161. The Hydrogen Tech.Court found that the FBI properly balanced the risk to the plaintiff against the potential public utility of the FBI's examination of the generator

7

that caused its destruction.

In response, Lippman points out that his FTCA claim is not merely challenging the decision to search his truck but the entire course of conduct in which he was under surveillance based on his history of exercising his First Amendment rights and that eventually led to the search and seizure of his truck. Additionally, Lippman argues that any consideration of the due care exception simply raises issues of fact and thus cannot be decided on a motion to dismiss.

The Court agrees with Lippman's second argument. It is simply premature to conduct the type of balancing approach set forth in Hydrogen Tech. Such an inquiry requires an examination of the circumstances and the facts surrounding the decision to search Lippman's truck. That cannot occur at the pleading stage.[2] Thus, the Court finds that it would be premature to apply the due care exception as a matter of law. Because of the other grounds asserted by the Government, however, its application in this case is unnecessary.

C. Detention of Goods Exception

Section 2680(c) provides an exception under the FTCA for "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." The term "law enforcement officer" is broadly interpreted to include all law enforcement officers, and thus includes FBI agents. Ali v. Federal Bureau of Prisons, ___ U.S. ____, No. 06-9130, 2008 WL 169359 (Jan. 22, 2008). The issue before the Court then is whether the FBI agents' search and seizure of Lippman's truck and its belongings constitute a

---

[2] Notably, Hydrogen Tech. concerned a summary judgment motion where there was no dispute over material facts. Id. at 1164.

detention of goods for purposes of this FTCA exception.

The Fifth Circuit Court of Appeals has held that a negligence claim brought under the FTCA for damage to a boat seized and for loss of its service while in storage was barred by the detention of goods exception set forth in section 2680(c).  United States v. One (1) 1972 Wood, 19 Foot Custom Boat, 501 F.2d 1327 (5th Cir. 1974);[3] see also United States v. Lockheed L-188 Aircraft, 656 F.2d 390 (9th Cir. 1979) (negligent seizure of aircraft claim barred under section 2680(c)).  Such a finding comports with the Supreme Court's interpretation of this exception as including claims resulting from the negligent handling or storage of detained property.  Kosak v. United States, 465 U.S. 848, 854 (1984).  The Court finds this reasoning can be applied to the intentional torts of trespass to chattel and invasion of privacy arising from a seizure of a vehicle.  Significantly, neither of these intentional torts fall under the category of intentional torts for which Congress has permitted recovery when committed by a law enforcement officer against a person.  See 28 U.S.C. § 2680(h) (permitting FTCA claims for assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights).  Indeed, none of the enumerated intentional torts in 28 U.S.C. § 2680(h) concerns damage to property.  Furthermore, in Jeanmarie v. United States, 242 F.3d 600, 604-05 (5th Cir. 2001), the Fifth Circuit addressed this exception in the context of intentional torts committed incident to search of a vehicle and held that the waiver of immunity in section 2680(h) only applies to tortious conduct that does *not* involve the

---

[3] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

seizure and detention of goods. Given that the acts complained of here concern the seizure of Lippman's property, these intentional torts are barred by this exception to the FTCA.

Moreover, to the extent that Lippman is claiming damages based on destruction of property, such relief is foreclosed under <u>Formula One Motors, Ltd. v. United States</u>. 777 F.2d, 822, 822-823 (2d Cir. 1985).  In that case, the United States Court of Appeals for the Second Circuit examined a FTCA claim that alleged that agents from the Drug Enforcement Agency, in the course of executing a warrant to search and seize an automobile that the plaintiff was importing into the United States, had destroyed the automobile while searching for narcotics. The plaintiff had argued this exception was inapplicable because the agent's conduct was not a detention, but destruction of the automobile. <u>Id.</u> at 824.  The Second Circuit rejected this interpretation and relied upon <u>Kosak</u> <u>supra</u>, which held that 2680(c) involved any claim "arising out of" a detention, including a claim stemming from negligent storage or handling of detained property. <u>Id</u>. <u>citing</u> <u>Kosak</u>, 465 U.S. at 854.

Nonetheless, Lippman argues that this exception does not apply when the detained "goods" were only detained for the duration of the search as opposed to taken into possession for a significant period of time.  Additionally, Lippman contends that his claims do not just concern the detention of his property, but the entire series of events that gave rise to the search and seizure. (Resp. at 14.)  With respect to this last argument, the Court simply notes that such a claim is, in essence, a claim for a constitutional violation that is encompassed in the Bivens claim. Finally, although Lippman insists that "fleeting control" of a vehicle during a search is not the type of situation to which this exception should be applied, he points to no cases to support his position.  Notably, in considering this particular exception, the Eleventh Circuit has stated

10

that the statutory language of section 2680(c) "sweeps within the exception all injuries associated in any way with the detention of goods." Metz v. United States, 788 F.2d 1528, 1533 (11th Cir. 1986) (internal quotation marks omitted).  That precedent, as well as the general directive that courts must err on the side of finding sovereign immunity, leads the Court to reject this argument advanced by Lippman.

Based on the foregoing, the Court finds that the detention of goods exception bars the FTCA claim in its entirety.

### D.  Discretionary Function Exception

Section 28 U.S.C. § 2680(a) precludes liability under the FTCA for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."   The Supreme Court has developed a two-step test to determine whether the government's conduct meets the discretionary function exception. Gaubert, 499 U.S. at 322-23.  The first step requires the Court to look to the nature of the challenged conduct and decide whether the conduct "violated a mandatory regulation or policy that allowed no judgment or choice." Autery v. United States, 992 F.2d 1523, 1526 (11th Cir.1993). The discretionary function exception will not apply "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  Gaubert, 499 U.S. at 322. Second, if the court determines that no "statute, regulation or policy specifically prescribes a course of action," the court must then consider whether the challenged conduct "is of the kind that the discretionary function exception was designed to shield."  Id. at 322-23.  The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social,

economic, and political policy through the medium of an action in tort." Id. at 323.

Here, the United States raises this exception with respect to the manner by which Lippman's truck was searched for a bomb. Specifically, the United States asserts that there is no guideline, regulation or statute that provided mandatory direction concerning how the truck was to be searched. (Reply at 7.) With respect to the second prong of the Gaubert analysis, the United States contends that the method used to conduct the search of the truck was grounded in public safety considerations. (Mot. at 15.) In response, Lippman argues that the method by which the search of truck was conducted is at the "periphery" of his claim and that the crux of the issue for the Court's consideration is the "overarching course of FBI conduct" that involved surveillance and search of his truck based upon his history of exercising his First Amendment rights and a lack of probable cause. (Mot. at 15.)

Here, neither party points to any statute, regulation or policy that applies to the manner by which the truck was searched.[4] Therefore, the Court must examine whether the search of Lippman's truck is the type of decision grounded in policy considerations. The Eleventh Circuit has analyzed the discretionary function exception in the context of a claim brought by a vessel owner against the United States regarding damage to a vessel that occurred during a search by customs agents. Mid-South Holding Co., Inc. v. United States, 225 F.3d 1201, 1206-07 (11th Cir. 2000).[5] In analyzing the claim, the Court stated that the "on-site decisions of the agents of the

---

[4] The Court notes that Lippman points to several internal guidelines of the United States Attorney General regarding the use of surveillance. (Resp. 17-18.) Those guidelines, however, do not address the method by which the truck was searched.

[5] The claim was brought pursuant to the Suits in Admiralty Act, 46 U.S.C. § § 741-52. However, the Suits in Admiralty Act is subject to the "discretionary function" exception of the FTCA. Id. at 1203-04.

Customs Service concerning the manner in which to search the vessel [ ] fall within the scope of the discretionary function exception." Id. at 1206 citing Varig Airlines, 467 U.S. 797, 819-20 (1984).  The Eleventh Circuit explained:

> Because no statute or corresponding regulation prescribes the methodology for boarding or searching a vessel field agents are left to their discretion to devise the best course for executing these functions. In so doing, the agents must balance their overarching goal of locating contraband with such concerns as efficiency and the minimization of intrusion on the privacy and property interests of searched parties. Although the attendant details could be characterized as mundane or as disengaged from any substantial policy consideration, they are nonetheless critical to the performance of the discretionary scheme and, accordingly, are entitled to the protection of the discretionary function exception.

Id. at 1206-07.

Indeed, other courts have held that the method by which law enforcement officials execute its functions are grounded in policy considerations and thus subject to the discretionary function exception.  See, e.g., O'Ferrell v United States, 253 F.3d 1257, 1267 (11th Cir. 2001) ("just how law enforcement agents are to conduct interrogations would appear to be a paradigmatic example of a discretionary function."); Kelly v. United States, 924 F.2d 355, 362 (1st Cir. 1991) ("decisions to investigate, or not, are at the core of law enforcement activity" and "involve[] precisely the kind of policy-rooted decision-making that section 2680(a) was designed to safeguard."); Piechowicz v. United States, 885 F.2d 1207, 1213 (4th Cir.1989) (selection into the witness protection program is a discretionary decision); Jet Indus., Inc. v. United States, 777 F.2d 303, 306 (5th Cir.1985) (selecting and supervising participants in witness protection program are discretionary functions); Taitt v. United States, 770 F.2d 890, 894 (10th Cir.1985) (holding that decision not to inform law enforcement personnel of the release of a witness with a criminal record is discretionary); Ostera v. United States, 769 F.2d 716, 718 (11th Cir.1985)

(FBI's decision to seek release of an informant from prison to use as an informant is a discretionary function); Flax v. United States, 847 F. Supp. 1183, 1190 (D.N.J. 1994) (decision regarding how to "tail" kidnappers is immune from liability involves policy judgment); Amato v. United States, 549 F. Supp. 863, 866 (D.N.J. 1982) (the decision of when to arrest and the determination of the plan of arrest are discretionary functions).[6]

Based on the foregoing, the Court concludes that the discretionary function exception bars the FTCA claim for negligence, trespass to chattels and invasion of privacy. Each of those torts directly relate to how the search of the truck was conducted. Lippman's insistence that the Court must instead consider the entire conduct of the FBI agents is best applied to Lippman's constitutional claim. In finding that this exception applies, the Court makes no finding regarding the constitutionality of the search and seizure of the truck.

2. Motion to Dismiss for Failure to State a Claim

The United States moves to dismiss the invasion of privacy, claiming that the cause of action does not meet the elements of that tort. (Mot. at 16-17.) Given that the Court finds that various exceptions bar Lippman's FTCA claim, the Court lacks subject matter jurisdiction over the FTCA claim. Therefore, the Court does not have jurisdiction to consider whether the invasion of privacy cause of action states a claim upon which relief can be granted. University of S. Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue");

---

[6] The Court rejects Lippman's reliance on Raz v. United States, 343 F.3d 945 (8th Cir. 2003). That case held that the discretionary function exception did not apply to the FBI's alleged surveillance activities because the plaintiff alleged they were conducted in violation of his constitutional rights. Id. at 948. Here, the discretionary function exception is raised only with respect to the search method used by the FBI agents and not with respect to the surveillance.

Keene v. Auto Owners Ins. Co., 78 F. Supp. 2d 1270, 1272 (S.D. Ala. 1999) (federal courts must "determine that they have subject matter jurisdiction over every action before proceeding to the merits of the case").

### III.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the United States' Motion to Dismiss [DE 137] Count VI of the Second Amended Complaint is **GRANTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of July 2008.

                                                KENNETH A. MARRA
                                                United States District Judge