UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21124-CIV-MARRA/JOHNSON

DAVID LIPPMAN,

    Plaintiff,

vs.

THE CITY OF MIAMI et al.,

    Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant United States' Suggestion of Dismissal[1] as to the Doe Defendants (DE 244). The Court has carefully reviewed the motion and is otherwise fully advised in the premises.

I. Background

According to the Third Amended Complaint ("TAC"), Plaintiff David Lippman ("Plaintiff" "Lippman") was working as a freelance reporter for Free Speech Radio News, when he traveled from North Carolina to Miami, Florida to cover the Free Trade Area of the Americas ("FTAA") summit meetings in November of 2003. (TAC ¶¶ 29-30.) Prior to the FTAA summit meetings, the City of Miami and the Miami Police Department ("MPD") planned for anticipated protests against the FTAA. (TAC ¶ 21.) The MPD assembled nearly 40 different law enforcement agencies from federal, state, county and municipal police departments to be part of the security force. (TAC ¶ 22.) The Federal Bureau of Investigation ("FBI") was one of the

---

[1] The United States does not appear on the behalf of the "Doe Defendants," but instead suggests the dismissal of these Defendants under its authority "to attend to the interests of the United States" pursuant to 28 U.S.C. § 517.

federal agencies that worked in conjunction with the City of Miami during the FTAA demonstrations. (TAC ¶ 28.)

While traveling from North Carolina to Miami, Lippman was "surveilled" by the FBI because he was a "known protestor w/history." Up to eight FBI agents conducted, participated in conducting, and/or supervised the surveillance. (TAC ¶ 30.) The FBI has a history of "tracking down" and "surveilling" individuals who participate in protests or express dissenting views. (TAC ¶ 28.)

On November 19, 2003, Lippman arrived in Miami and parked his 1991 Nissan pickup truck in a parking lot at Northeast 2nd Street and Northeast 2nd Avenue so he could approach the demonstrations on foot. Left in his car were Lippman's computer, some clothing and a guitar. (TAC ¶ 32.) Later that day, Lippman returned to the parking lot and saw his truck being towed away. (TAC ¶ 33.) An employee of the parking lot told Lippman that the MPD had reported that the FBI had instructed them to check Lippman's truck for a bomb. (TAC ¶ 34.) Officers from three agencies, the Broward County Sheriff's Office ("BSO"), the FBI and the MPD, performed a search and seizure of Lippman's truck. (TAC ¶ 35.)

The decision to search Lippman's truck for a bomb "was initiated by a request from a 'Special Intelligence Unit' comprised of some or all of the FBI Doe Defendants who had surveilled Lippman from North Carolina to Miami or comprised of law enforcement officers working directly along with or under the auspices of those FBI Doe Defendants" "and/or by request made directly by the FBI Doe Defendants who had conducted the surveillance of

Lippman."[2]  (TAC ¶ 36A.)  The FBI Doe Defendants had no probable cause or other legal justification to believe that a bomb or any type of explosive was located in the truck.  The request was the last step in the surveillance of Lippman's truck from North Carolina to Miami on the basis that Lippman was a "known protestor w/history."  By causing his truck to be searched, the FBI Doe Defendants violated Lippman's First Amendment rights to free press, speech and assembly. (TAC ¶ 36B.)

After much difficulty, Lippman located his truck and recovered it from the MPD.  Both passenger cab windows of the truck were broken out, and in the back of the truck, where the camper top closes, both padlocks were broken off.  Inside the truck, all of Lippman's personal belongings were turned upside-down, opened and scattered.  The computer left in Lippman's truck was outside of its case, files were dumped out in all directions, glass was all over the seats, a flashlight and plastic drawers were broken and the gas cap was missing. (TAC ¶ 38.)

Lippman suffered consequential damages as a result of losing his truck and the use of his personal property.  He was unable to draft or file a story regarding the FTAA demonstrations, he was unable to change clothing, use his personal hygiene items, or play his guitar.  Lippman also experienced the anxiety of not knowing whether he would ever recover his truck, computer, guitar and other personal belongings. (TAC ¶ 39.)  No bomb, contraband or any illegal substance was found in Lippman's truck, nor were any criminal charges brought against Lippman. (TAC ¶¶ 40-41.)

---

[2] An affidavit attached to the TAC states that a member of the Special Intelligence Unit contacted Miami Sergeant Masferrer and told him that Lippman's truck was "thought to be suspicious."  According to Masferrer, it was "protocol to further investigate all suspicious vehicles." (Masferrer Aff. ¶ 12, attached to DE 232-1.)  The FBI is the agency primarily responsible for training the Miami Bomb Squad Personnel. (Masferrer Aff. ¶¶ 2, 5.)

The FBI had no probable cause or other legal justification to conduct surveillance of Lippman.  As a result of the surveillance by the Doe Defendants, Lippman's truck was searched and seized in violation of his constitutional rights. (TAC ¶ 31.)  As a result of learning that the FBI conducted surveillance which led to the search, seizure and damage to his property, Lippman has been chilled in the exercise of his First Amendment rights.  Lippman feels intimidated by the police and now exercises caution and reservation before attending or participating in political demonstrations. (TAC ¶ 45.)

The Court previously dismissed Lippman's First Amendment claim, concluding that the allegations did not provide a direct nexus between the surveillance by the Doe Defendants and the decision by the named FBI Defendants to search and seize the truck.   The Court granted Lippman leave to amend, assuming Lippman could allege a First Amendment claim against the Doe Defendants based on direct involvement in the search and seizure of his truck.

The United States now suggests dismissal of the First Amendment claim lodged against the Doe Defendants on several grounds.   First, the United States argues that the TAC fails to state a claim for First Amendment retaliation against the Doe Defendants because the TAC fails to allege the existence of a retaliatory motive or animus and fails to allege that the Doe Defendants personally participated in the alleged search and seizure of the truck.  Second, the United States contends that qualified immunity should apply to the First Amendment claim.  Lastly, the Untied States asserts that the First Amendment claim is time-barred.

II.  Legal Standard.

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III.  Discussion

To state a First Amendment retaliation claim, the United States Court of Appeals for the Eleventh Circuit has stated that a plaintiff "must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the

protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

Here, the TAC alleges that, having "surveilled Lippman from North Carolina to Miami . . . because he was a 'known protestor w/history,'" and with "no probable cause or other legal justification," the Doe Defendants, as "the last stop in the surveillance," "request[ed] or caus[ed] others to request" that Lippman's truck be "searched for a bomb," thereby "initiat[ing]" "the decision" to conduct the search and "causing the search and seizure" of the vehicle and the Doe Defendants did this based upon Lippman's "status as a 'known protestor w/history'" "without reasonable . . . individualized suspicion" and "with no probable cause or other legal justification to believe that a bomb. . .was located in the [truck]." (TAC ¶¶ 30-31, 36A-36B, 114.) As a result of learning of the surveillance by the Doe Defendants, Lippman feels chilled in the exercise of his First Amendment rights and feels intimidated by the police and exercises caution and reservation before attending and/or participating in political demonstrations. (TAC ¶ 45.) Based on these allegations, the TAC has pled the elements required under Bennett supra (i.e., constitutionally protected speech (protest activity), retaliatory conduct (surveillance, initiating decision to conduct search, causing others to request that truck be searched) and causal connection (surveillance has lead to chilling of First Amendment rights).[3] See Kilpatrick v. United States, 578 F. Supp. 2d 1339, 1348 (N.D. Fla. 2008) (the police engaged in retaliatory conduct when they stopped and searched the plaintiff's van, questioned her about what was written on her van, and admonished the plaintiff to remove the writing from her van).

---

[3] The Court notes, however, that Plaintiff's "claim depends not on the denial of a constitutional right, but on the harassment [he] received for exercising [his] rights." Bennett, 423 F.3d at 1253.

Nonetheless, the United States contends that the TAC fails to plead the essential element of retaliatory intent. (DE 244 at 5.) The United States does not explain how this "essential element" interplays with the three elements highlighted in Bennett. Nor does the United States explain the lack of discussion of this "essential element" in that case. Putting that aside, the Court has examined the cases cited by the parties, and has determined that, at the very least, the TAC "must contain sufficient factual matter, which if accepted as true, states a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In other words, the TAC must provide "a sequence of events from which one could . . . plausibly infer a retaliatory motive." Smith v. Florida Dep't of Corrections, No. 09-12894, 2010 WL 1377351, at * 5 (11th Cir. Apr. 8, 2010). By alleging that the Doe Defendants "surveilled" Lippman "because he was a known protestor w/history" (TAC ¶ 30), a retaliatory motive can be inferred.[4]

Equally unpersuasive is the United States' contention that the TAC has failed to plead the requisite personal involvement of the Doe Defendants. (DE 244 at 8.) Simply put, the TAC alleges that these Defendants were the precipitating cause of the search having been conducted on Lippman's truck because they requested or caused others to request that Lippman's truck be searched for a bomb (TAC ¶ 36A-B.) An affidavit attached to the TAC states that a member of the Special Intelligence Unit contacted Miami Sergeant Masferrer, told him that Lippman's truck was "thought to be suspicious," and Sergeant Masferrer explained that it was "protocol to further

---

[4] The United States argues that the TAC also identifies a non-retaliatory motive for the search of Lippman's truck; namely, to check for a bomb. (DE 244 citing TAC ¶ 34.) At the pleading stage, the Court is in no position to resolve this issue. At either summary judgment or trial, the United States will be provided with the opportunity to demonstrate that it would have taken the same action with respect to Lippman even in the absence of his protected conduct. See generally Mt. Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274 (1977)

investigate all suspicious vehicles." (Masferrer Aff. ¶ 12, attached to DE 232-1.) In other words, it is reasonable to infer from all the circumstances alleged in the TAC that, given the mutual-aid working relationship between the FBI and the Miami Police in connection with the FTAA summit and the training Sergeant Masferrer received from the FBI, that the directive from the Doe Defendants would be taken as a directive to act.  Without the communication from the Doe Defendants that Lippman's truck was suspicious, it is also reasonable to infer that the search would not have occurred.  See LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (section 1983 defendants' acts must be "the cause - not merely a contributing factor - of the constitutionally infirm condition.").  For the foregoing reasons, the Court finds that the First Amendment claim is properly pled.

The Court will now address the qualified immunity issue.  "[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir.2009) (quoting McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir.2009).  Qualified immunity protects officers acting within the scope of their discretionary authority at the time of the incident.[5] McCullough, 559 F.3d at 1205.  The Supreme Court has established a two-part test for determining whether government officials are entitled to qualified immunity, and the district court has discretion to determine in what order to address each part. Pearson, 129 S.Ct. 808, 818

---

[5] The TAC alleges that the Doe Defendants were employed as FBI agents and conducting surveillance. (TAC ¶ ¶ 20, 30); see Holloman ex rel Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) (discretionary functions are those falling within an employee's job responsibilities).

8

(2009). The court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The court must also determine whether the constitutional violation was clearly established. Saucier, 533 U.S. at 201.  Assuming the plaintiff can establish both parts of the test, the government officials are not entitled to qualified immunity.  Here, the Court has determined that if Lippman's allegations are true, he has established a constitutional violation. Therefore, the Court will now address whether the law was clearly established to put the Doe Defendants on notice that their behavior violated Lippman's First Amendment rights. Specifically, was the law clearly established that a government actor who surveilled an individual in retaliation of his past known exercise of his First Amendment rights and which led to an unconstitutional search of his personal property acted in violation of that individual's constitutional rights?

"A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is 'apparent,' and if a constitutional rule applies with 'obvious clarity' to give an official 'fair warning' that violating that right is actionable." Bennett, 423 F.3d at 1255 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987) and Vinyard v. Wilson, 311 F.3d 1340, 1350-52 (11th Cir. 2002)).  In Bennett, the Eleventh Circuit explained that it had held "*since at least 1988 . . .* it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights."[6] Id. at 1256 (emphasis added).  Based on this clear statement of law, the

---

[6] In fact, Bennett provided the following review of this long-standing and relevant case law:

> This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights. See Cate

Court finds that the TAC alleges a violation of clearly established rights.[7]

Finally, the Court rejects in its entirety the United States' argument that Lippman's First Amendment claim is time-barred. The Court held a motion hearing in this matter and addressed the issue of the Doe Defendants with Plaintiff's counsel and the counsel representing the interests of the Doe Defendants. The Court highlights pertinent portions of the transcript between the Court and Mr. Martin, counsel representing the interests of the John Doe Defendants:

The Court: . . . if I conclude that there is a claim, and they should be able to go forward

---

v. Oldham, 707 F.2d 1176, 1186 (11th Cir. 1983) (punishment for exercise of First Amendment rights violates First Amendment); see also City of Houston v. Hill, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); see also Leslie v. Ingram, 786 F.2d 1533, 1537 (11th Cir.1986) ("An intentional and wrongful retaliation for the assertion of a constitutionally protected right is a substantive civil rights violation which may be prosecuted in a federal court pursuant to 42 U.S.C. § 1983 ...."), abrogated on other grounds by Graham v. Connor, 490 U.S. 386 (1989); Ga. Ass'n of Educators v. Gwinnett County Sch. Dist., 856 F.2d 142, 145 (11th Cir.1988) ("The Government may not retaliate against individuals or associations for their exercise of First Amendment rights 'by imposing sanctions for the expression of particular views it opposes.'") (quoting Smith v. Ark. State Highway Employees, 441 U.S. 463, 464 (1979)).

Bennett, 423 F.3d at 1255-56.

[7] The Court is not persuaded by the arguments presented by the United States. Laird v. Tatum is inapposite given that the TAC now alleges direct involvement between the Doe Defendants and the search and seizure of the truck as well as a direct injury resulting from the surveillance. Laird v. Taitum, 408 U.S. 1 (1972); see TAC ¶¶ 36A-B, 45. Furthermore, the United States has cited numerous cases standing for the proposition that arguable probable cause to arrest provides police officers with qualified immunity from First Amendment claims. (DE 244 at 14.) However, those cases arise in the summary judgment context, where there is record evidence of arguable probable cause. Here, the Court is presented with a complaint and that complaint pleads the absence of probable cause. (TAC ¶ 36B.) The United States provides citation to record evidence filed in support of the pending motions for summary judgment by other Defendants in this action. However, the United States has provided no authority that would allow the Court to rely upon this evidence to make a determination about arguable probable cause with respect to this motion to dismiss and with respect to these Defendants.

>against the surveillance people, then shouldn't they have been allowed and **to add them at that point?**
>Mr. Martin: Yes, sir.
>
>The Court: So, you would not object, then, unless they're going to come up with some other type of allegation that might be different from what is presently being asserted, surveillance. That's the only basis upon which, if I conclude there is a valid cause of action for surveillance, you would agree then at that point, you would either disclose the names of the individuals or either openly or under seal have the [sic] joined as John Does and protect their identities to the extent necessary, **and not bring up, well, it is too late to add these people**. . . .
>
>Mr. Martin: Yes, sir.
>
>. . . .
>
>The Court: . . . If all they want is the identity and if the only issue is whether there is a valid cause of action for surveillance or not and we can resolve that issue initially, and obviously if I agree with you, there wouldn't be any need to find the identity to find the right people. If I agree with them, **then we're going to have to give them the opportunity to add those people**.
>
>Mr. Martin: Understood, Your honor.
>
>The Court: Does that make sense?
>
>Mr. Martin: That makes sense to me, sir.

(March 15, 2007 Transcript, DE 162-1.) (emphasis added).

Clearly, based on the excerpts highlighted supra, the United States is precluded from arguing that Lippman's claim against the Doe Defendants is time-barred based on his failure to name or serve the Doe Defendants within four years after his claim accrued. At the March 2007 proceeding, the Court addressed not just the issue of disclosing the names of the Doe Defendants but allowing Lippman to add these Defendants as parties once the Court resolved the viability of Lippman's claim against these Defendants. Given the representations made previously, the Court

finds that the statute of limitations argument fails.[8]

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant United States' Suggestion of Dismissal as to the Doe Defendants (DE 244) is **DENIED.**[9]

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 16th day of June, 2010.

 

_____
KENNETH A. MARRA
United States District Judge

---

[8] This ruling is also consistent with <u>Krupski v. Costa Crociere S.p.A.</u>, — S. Ct. —, 2010 WL 2243705 (June 7, 2010).  In that case, the United States Supreme Court held that the relevant question under Rule 15(c)(1)(C)(ii) of the Federal Rules of Civil Procedure is not whether the plaintiff should have known the identity of the defendant as the proper defendant but whether the defendant knew or should have known that he would have been named as a defendant but for an error.  Here, it would appear that the Doe Defendants know that they would be named as defendants.

[9] The Court advises the parties that it is actively working on the other pending motions and expects to rule on them in the near future.  The Court apologizes to the parties for the delay in resolving these matters.